UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SUSAN A. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:17-cv-00015-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Nancy A. Berryhill*,[1] | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Susan A. Smith appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for disability insurance benefits ("DIB").[2] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED for further proceedings in accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Smith applied for DIB in September 2012, alleging disability as of March 1, 2007. (DE 10 Administrative Record ("AR") 322-36). Smith was last insured for DIB on March 31, 2014 (AR 337), and therefore, she must establish that she was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, *see Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017), and thus, she is automatically substituted for Carolyn W. Colvin in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (DE 13); *see* 28 U.S.C. § 636(c).

The Commissioner denied Smith's application initially and upon reconsideration. (AR 143-67). After a timely request, a hearing was held on May 11, 2015, before Administrative Law Judge Yvonne K. Stam (the "ALJ"), at which Smith, who was represented by counsel; Smith's husband; and a vocational expert testified. (AR 35-94). On August 24, 2015, the ALJ rendered an unfavorable decision to Smith, concluding that she was not disabled because despite the limitations caused by her impairments, she could perform a significant number of jobs in the economy. (AR 15-29). Smith's request for review was denied by the Appeals Council (AR 1-16), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Smith filed a complaint with this Court on January 17, 2017, seeking relief from the Commissioner's decision. (DE 1). In the appeal, Smith alleges that the ALJ erred in: (1) failing to account for her moderate difficulties in maintaining concentration, persistence, or pace when assigning the mental residual functional capacity ("RFC"); (2) assigning little weight to her treating neurologist's opinion; (3) failing to account for her headaches, certain other physical problems, and the combination of her impairments when assigning the RFC; and (4) discounting the credibility of her symptom testimony. (DE 16 at 10-26).

At the time of the ALJ's decision, Smith was 35 years old (AR 29, 322), had a high school education (AR 390), and had work experience as a cashier, a manager of a fast food restaurant, a sales associate, and a shipping and receiving clerk (AR 390, 470). Smith alleges disability due to diabetes, morbid obesity, hypertension, asthma, major depression, lumbar facet arthropathy, and migraine headaches. (AR 40, 389).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12

3

months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

B. The Commissioner's Final Decision

On August 24, 2015, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-29). At step one, the ALJ concluded that Smith had not

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

4

engaged in substantial gainful activity from her alleged onset date of January 12, 2012, through her date last insured of March 31, 2014. (AR 17). At step two, the ALJ found that Smith had the following severe impairments: major depressive disorder, degenerative disc disease, and obesity. (AR 17). At step three, the ALJ concluded that Smith did not have an impairment or combination of impairments severe enough to meet or equal a listing as of her date last insured. (AR 20-24).

Before proceeding to step four, the ALJ determined that Smith's symptom testimony was "not entirely credible" (AR 26) and then assigned Smith the following RFC:

> [T]hrough the date last insured, the claimant had the [RFC] to perform sedentary work . . . except that the claimant could only occasionally climb ramps and stairs, ladders, ropes, and scaffolds; occasionally kneel, stoop, crouch, and crawl; and needed to avoid exposure to vibration and hazards such as unguarded machinery and unprotected heights. The claimant was limited to simple routine tasks in an unchanging work setting with unchanging work processes.

(AR 24). Based on the assigned RFC and the vocational expert's testimony, the ALJ found at step four that Smith was unable to perform any of her past relevant work. (AR 27). The ALJ found at step five that Smith could perform a significant number of unskilled, sedentary jobs in the economy, including an addresser, a charge account clerk, and a telephone clerk. (AR 28). Therefore, Smith's application for DIB was denied. (AR 29).

*C. Dr. Collins's Opinion and the RFC*

Smith argues that the ALJ's rationale for discounting the opinion of her treating neurologist, Dr. John Collins, concerning her chronic headaches is flawed and not supported by substantial evidence. In tandem, Smith argues that the ALJ erred by failing to account for her chronic headaches in the assigned RFC. For the following reasons, Smith's arguments have

5

some merit.

The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 404.1527(c)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870 (citing 20 C.F.R. 404.1527(d)(2)); *see Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner must apply the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. *See Books*, 91 F.3d at 979; 20 C.F.R. § 404.1527(c). The Commissioner must always give good reasons for the weight ultimately applied to the treating source's opinion. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(c)(2).

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); *see Young v. Barnhart*, 362 F.3d 995, 1000-02 (7th Cir. 2004) (citations omitted); 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."). The RFC assessment "is based

6

upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545. Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

Dr. Collins treated Smith on 16 occasions from February 2012 to October 2012 for her low back pain, neck pain, and migraine headaches. (AR 1375-1416, 1433-35, 1451-53). Smith described the frequency and intensity of her headaches to Dr. Collins at these visits. Dr. Collins's examinations revealed cervical myofascial tenderness; pain with palpation over the cervical facet joints; teres major, teres minor, and trapezius tenderness, decreased temperature sensation in the lower extremities and left side of the face; and decreased sensation to pinprick in the arms and posterior cervical area. (*See, e.g.*, AR 1414). Dr. Collins treated Smith's headaches by using abortive medications, preventative treatment, and performing nerve blocks and myofascial injections. (AR 1377, 1393-94).

In October 2012, Dr. Collins completed a headaches impairment questionnaire on Smith's behalf. (AR 1375-80). Diagnoses reflected chronic headaches with a tension migraine component, sleep disturbance with insomnia, myofascial pain, chronic low back pain, chronic pain syndrome, degenerative disc disease of the cervical spine, occipital neuralgia, and cervical spondylosis. (AR 1375). The intensity of Smith's headaches ranged from moderately intense at

7

times to severely intense at times, and her prognosis was poor to fair. (AR 1375-76). Other symptoms associated with Smith's headaches were vertigo, nausea and vomiting, malaise, photosensitivity, visual disturbances, mood changes, and mental confusion or inability to concentrate. (AR 1376). Dr. Collins indicated that Smith reported experiencing headaches on a daily basis that were severe enough to constantly interfere with her attention and concentration. (AR 1376, 1378). Her headaches were triggered by bright lights, noise, strong odors, lack of sleep, stress, and weather changes, and were worsened by stress and moving around. (AR 1376-77). Dr. Collins indicated that Smith's impairments had been present since 2010, were ongoing, and would last at least 12 months. (AR 1378-79). He opined that when Smith had a headache, she would be precluded from performing even basic work activities and would need a break from the workplace; he viewed her to be incapable of even "low stress" work. (AR 1379). Dr. Collins estimated that Smith would miss more than three days of work a month due to her headaches, and that she needed to avoid noise, fumes, gases, temperature extremes, and dust, as well as all pushing or pulling. (AR 1379).

The ALJ summarized and considered Dr. Collins's opinion, but ultimately decided that it did not merit controlling or great weight concerning Smith's functioning through her date last insured. (AR 19, 27). More specifically, the ALJ explained:

> Dr. Collins opined that the claimant would miss more than 3 days of work per month due to her constant pain. While it is true that Dr. Collins was a treating specialist at the time he provided the medical source statement, he did not continue to treat the claimant for a full year. Further, the claimant's headaches eventually responded to his treatment by medications and occipital injections, and after 2012, the claimant did not specifically seek treatment just for her headaches. It appears the main reason for the functional limits he thought were present did not remain at the same level of severity for at least 12 months. Further, his treating relationship

8

> with the claimant ended in September 2012 and he did not examine
> her again after that, so he would then become a non-treating, non-
> examining medical source for periods after September 2012. The
> last time the claimant sought treatment for headaches at an
> Emergency Room was in October 2012. Dr. Collins did not cite to
> other evidence of record besides his own examinations and
> minimal findings on MRI of the spine to support his opinion, and
> there is no evidence that he had access to the rest of the evidence,
> and for these reasons, his opinion is not given controlling weight
> or great weight as to the claimant's functioning through her date
> last insured in March of 2014.

(AR 27 (internal citation omitted)).

Smith argues that the ALJ's reasoning with respect to Dr. Collins's opinion is flawed in several respects. First, Smith contends that the ALJ improperly discounted Dr. Collins's opinion based on the length of the treating relationship. Indeed, Smith saw Dr. Collins 16 times in nine months, which generally is enough time to have obtained a longitudinal picture of Smith's medical impairment. *See* 20 C.F.R. § 404.1527(c)(2) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source."); *see, e.g.*, *Rose v. Berryhill*, 256 F. Supp. 3d 1079, 1089-90 (C.D. Cal. 2017) (finding that treating the claimant seven times in an eight-month period was long enough for the doctor to obtain a longitudinal picture of the claimant's impairment); *Strbac v. Comm'r of Soc. Sec.*, No. 1:15-CV-01885, 2016 WL 5255066, at *13 (N.D. Ohio Aug. 3, 2016) (finding that a six-month treating relationship was sufficient); *Credle v. Astrue*, No. 10-CV-5624 (DLI), 2012 WL 4174889, at *22 (E.D.N.Y. Sept. 19, 2012) (finding 25 visits in a six-month period was sufficient); *Wamsley v. Astrue*, 780 F. Supp. 2d 1180, 1189 (D. Colo. 2011) (finding a seven-month treating relationship was sufficient); *cf. Sullivan v. Comm'r of Soc. Sec.*, No. 16-cv-

9

06233-HRL, 2017 WL 4949280, at *4 (N.D. Cal. Nov. 1, 2017) (finding a two-month treating relationship was insufficient to obtain a longitudinal picture of the claimant's medical condition); *Higgins v. Colvin*, No. 2:15-cv-832 BCW, 2017 WL 449766, at *3 (D. Utah Feb. 2, 2017) (same); *Thach v. Astrue*, No. 1:10-CV-136-SA, 2011 WL 5082153, at *4 (D. Utah Oct. 26, 2011) (finding that three months was insufficient); *Lee v. Astrue*, No. 10-10708-DJC, 2011 WL 2748463, at *13 (D. Mass. July 14, 2011) (finding that four months was insufficient); *Haman v. Astrue*, No. 8:08CV416, 2009 WL 1846825, at *9 (D. Neb. June 26, 2009) (finding that three months was insufficient); *Nelson v. Astrue*, No. 5:07CV00238 JLH/JTR, 2008 WL 5111159, at *4 (E.D. Ark. Dec. 2, 2008) (finding that one month was insufficient).

Indeed, the ALJ's reliance on Dr. Collins's nine-month treatment history to discredit his opinion is "particularly suspect" given that the ALJ chose to assign great weight to the opinion of Dr. B.T. Onamusi, who examined Smith just once, and some weight to the opinions of Dr. Louise Wunsch, and Dr. J. Sands, the reviewing state agency physicians who never examined her at all. (AR 26); *Rose*, 256 F. Supp. 3d at 1090 (remanding case where the ALJ discredited the treating physician's opinion based on an eight-month treatment history, but fully credited a physician who examined the claimant only once); *Strbac*, 2016 WL 5255066, at *13 (remanding case where the ALJ discredited the treating physician's opinion based on a six-month treatment history, but relied on the state agency doctors who only reviewed the claimant's records); *Cabrera v. Berryhill*, No. 16-CV-4311 (AT) (JLC), 2017 WL 3172964, at *10 (S.D.N.Y. July 25, 2017) (remanding case where the treating physicians saw the claimant at a frequency of every one or two months, and thus, were more likely to obtain a longitudinal picture of the claimant's condition than the consultative examiners, who saw the claimant once for only a few

10

hours); *Credle*, 2012 WL 4174889, at *22 (remanding case where 25 visits to the treating doctor in a six-month period provided enough of a longitudinal picture, particularly when contrasted with the ALJ's reliance on a single visit to another doctor); *see generally Eakin v. Astrue*, 432 F. App'x 607, 612 (7th Cir. 2011) (finding that the ALJ erred by applying minimal weight to the claimant's sole treating specialist).

Smith also challenges the ALJ's discrediting of Dr. Collins's opinion on the basis that her "headaches eventually responded to his treatment by medications and occipital injections," that she "did not specifically seek treatment just for her headaches" after 2012, that her headaches "did not remain at the same level of severity for at least 12 months," and that the last time she sought treatment at an emergency room for her headaches was in October 2012. (AR 27). In a nutshell, the ALJ found that Smith's headaches had substantially improved after Dr. Collins issued his September 2012 opinion. The ALJ echoed this conclusion earlier in her decision, stating that after Smith underwent occipital injections in 2012 (and again in November 2013), she "still had about three headaches per week, but they were mild," and that in October 2014, she told Dr. Roth that she "had headaches 2 days per month." (AR 19).

The ALJ's characterization of the evidence concerning Smith's headaches after Dr. Collins issued his opinion, however, is not well supported. While Smith's headaches did improve to some extent as a result of Dr. Smith's treatment, "[s]imply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing [full-time, competitive] work." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014); *see, e.g.*, *Allensworth v. Colvin*, 814 F.3d 831, 834 (7th Cir. 2016) ("[N]o evidence was presented that the relief was complete, or even substantial . . . ."); *Gholston v. Astrue*, No. 11 CV 4671, 2012 WL

11

1463553, at *13 (N.D. Ill. Apr. 27, 2012) (noting that while the claimant testified taking medications eased her headaches, this improvement did not necessarily equate with an ability to work full-time).

Furthermore, the October 2014 record relied on by the ALJ actually reflects that Smith reported having *21* headaches a month, not *two* headaches a month as the ALJ stated. (AR 19 (citing AR 1840)). Likewise, other records from 2013 and 2014 reflect that Smith at times experienced headaches at a greater frequency or intensity than the ALJ described. (*See, e.g.*, AR 1576 (daily in March 2013); 1853 (headaches occurring 12 times a month in September 2014), 1863 (six times a month in August 2014), 1870 (three to four times a week or daily in July 2014), 1880 (three to four times a week in June 2014), 1888 (same in May 2014), 1898 (three to four times a week in late April 2014), 1907 (eight times a month in early April 2014), 1913 (three times a month in March 2014), 1919 (three times a month in February 2014), 1939 (10 times a month in January 2014), 1945 (five times a month in December 2013), 1951 (seven times a month in November 2013), 1965 (same in October 2013), 1978 (same in September 2013), 1985 (same in August 2013), 1997 (four times a month in July 2013), 2011 (six times a month in June 2013), 2017 (three to four times a week in May 2013)). In that regard, the VE testified that if a claimant misses two or three days a month or more than 12 days a year, she would not be able to maintain competitive employment. (AR 64); *see Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days . . . . Suppose that half the time she is well enough that she could work and half the time she is not. Then she could not hold down a full-time job." (citations omitted)).

Thus, while some improvement was noted, the frequency and intensity of Smith's headaches continued to fluctuate even during Dr. Collins's course of treatment. (*See, e.g.*, AR 1385 (reporting in July 2012 that she noted significant improvement in her headaches, but that she still had four headaches lasting two to three days in the last month), 1390 (reporting in June 2012 that her headaches occurred two to three times a week, commenting that her headaches fluctuated in that some days are better and some days are worse), 1395 (reporting in May 2012 that she had daily headaches for the past two to three weeks), 1398 (reporting in April 2012 that her headaches were decreasing in severity and frequency, but that she still had three headaches since her last visit), 1407 (reporting in March 2012 that her migraine headaches had been relieved for the most part by the cervical facet injections, but that she still had headaches two to three times a week), 1412 (reporting in February 2012 that since undergoing the occipital blocks, she was having intermittent headache pain at the same frequency, but with milder symptoms), 1433 (complaining in October 2012 of a headache that lasted for five days that gradually progressed in severity), 1451 (stating in September 2012 that her headaches had increased due to increased stress)). As such, the ALJ cherry-picked the evidence in an effort to support her conclusion that Smith's headaches "caused no more than minimal functional limits and were not severe" as of her date last insured. (AR 19). An ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted); *see also Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Smith also challenges the ALJ's discrediting of Dr. Collins's opinion on the basis that he "did not cite to other evidence of record besides his own examination and minimal findings on

MRI of the spine to support his opinion." (AR 27). Indeed, it is unclear what other evidence the ALJ thought a treating physician should have reviewed when completing the headaches impairment questionnaire, other than the treating physician's own examination findings and any medical tests. As such, this reason also does not provide a sound basis to discredit Dr. Collins's opinion. *See, e.g.*, *Wanserski v. Colvin,* No. 1:145-cv-1033-DKL-JMS, 2015 WL 5692521, at *5 (S.D. Ind. Sept. 28, 2015) (noting that an unremarkable scan is consistent with, and in fact, required for, a diagnosis of migraine headaches because it eliminates other possible causes of the symptoms); *Longerman v. Astrue*, No. 11 CV 383, 2011 WL 5190319, at *8-10 (N.D. Ill. Oct. 28, 2011) (remanding an ALJ's rejection of a treating specialist's opinion about the claimant's migraine headaches where the ALJ cited a lack of "medical documentation," observing that it was unclear what documentation the ALJ meant).

The Commissioner, however, suggests that there are other bases upon which to discount Dr. Collins's opinion: that the opinion was primarily based on Smith's subjective complaints or that the opinion was inconsistent with the opinions of Dr. Onamusi and the state agency physicians. (DE 17 at 8). But these reasons were not cited by the ALJ and amount to impermissible *post hoc* rationalization. The Court "confine[s] [its] review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence." *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) (citations omitted); *see Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("We have made clear that what matters are the reasons articulated *by the ALJ*."); *Longerman*, 2011 WL 5190319, at *11 ("[T]he ALJ never articulated these reasons for discrediting Dr. Kurilo's assessment and the Commissioner's after-the-fact contentions are not a substitute for the ALJ's

analysis." (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003)).

In any event, neither Dr. Onamusi nor the state agency physicians specifically discussed Smith's headaches in their opinions, or for that matter, the diagnoses of chronic headaches with a tension migraine component and occipital neuralgia assigned by Dr. Collins, or the diagnoses of chronic daily headache and occipital neuralgia assigned by Dr. Roth. (*See* AR 131-33, 145-47, 1375, 1463, 1668-72). The void in the opinions of Dr. Onamusi and the state agency physicians concerning Smith's headaches undercuts the Commissioner's *post hoc* suggestion that Dr. Collins's opinion was inconsistent with other opinions of record. *See generally Johnson v. Berryhill*, No. 16 CV-2026-LTS, 2017 WL 3951640, at *9 (N.D. Iowa Sept. 8, 2017) ("The silence of Johnson's physicians regarding her mental health may not be substantial evidence to support the rejection of Dr. Jacobs' medical opinions[.]"). Moreover, in this particular instance, there is no indication that the ALJ incorporated *any* restrictions into the RFC to account for Smith's headaches—at the very least, to avoid exposure to triggering environmental conditions such as noise, strong odors, or bright lights. (*See* AR 40, 1377, 1379).

In sum, Smith's treating neurologist, Dr. Collins, opined that Smith may be absent more than three times a month as a result of her headaches, which is inconsistent with competitive work, and the ALJ failed to cite good reasons to reject Dr. Collins's opinion. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (stating that an ALJ must offer "good reasons" for rejecting an opinion of a treating physician); *Longerman*, 2011 WL 5190319, at *9 (finding a claimant's testimony and reported activities were consistent with her treating doctor's opinion that when she had a severe headache, she would generally be precluded from performing even basic work activities and would need to take a break from the workplace). The improvement that Smith

15

experienced in her headaches initially in 2012 through Dr. Collins's treatment does not necessarily equate with an ability to perform full-time work prior to her date last insured.

Consequently, the Commissioner's final decision will be remanded for reconsideration of Dr. Collins's opinion, the evidence pertaining to Smith's headaches, and the RFC.[4] *See, e.g., Moon v. Colvin*, 763 F.3d 718, 722-23 (7th Cir. 2014) (remanding for reconsideration of the claimant's headache symptoms); *Wanserski*, 2015 WL 5692521, at *8 (same).

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Smith and against the Commissioner.

SO ORDERED.

Entered this 22nd day of August 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[4] While Smith asks that she be awarded benefits outright, the Court can only do so where all of the factual issues have been resolved and the record compels but one conclusion. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Here, the record does not compel but one conclusion, and thus, the case will be remanded.

Because a remand is warranted based on Smith's argument concerning the ALJ's consideration of Dr. Collins's opinion and the evidence pertaining to her chronic headaches, the Court need not reach her remaining arguments.